2376-82 United States v. Borough Good morning, Your Honors. The issue in this case is whether the district court violated my client's right to due process of law when it imposed a 30-year sentence based on a supposition that he ordered his co-defendants to murder Mr. Belkarin. And I can tell you what happened. There were five co-defendants. All of the co-defendants were sentenced before the Supreme Court reversed and remanded Mr. Laura's case for resentencing. In each of those sentencing hearings, the government argued that Mr. Laura ordered the murder. The basis for that argument, I think, was in a statement found in at least four out of five, I don't know if it was in the fifth one, Mr. Kaban's pre-sentence report. And it goes like this. Paragraph 17 of Mr. Laura's pre-sentence report. Laura directed Trujillo and Lopez to take care of the problem. The problem was that Belkarin was threatening Palmer and Lopez and get rid of Belkarin. The court agreed with the government. In each of those cases, found that Mr. Laura directed his co-defendants to murder Mr. Belkarin. Before Mr. Laura was resentenced, I had a conversation with the prosecutor who was on the case at the time and told him that I had gone through all of the statements and I couldn't find any evidence directly implicated my client in that decision. In other words, nothing supported the sentence that was in the PSR. Nothing supported the sentence that was in the PSR as having been a statement that was made at trial. Correct. Or anywhere else for that matter. Okay. But leave that aside. What about other evidence? Circumstantial evidence that indicated that Laura was taking a lead position in this? The fact that he procured the gun. The fact that he surveilled the area. All the circumstances that surrounded the murder apart from any direct statement that the witness might have made. Right. He didn't procure the gun. That was Mr. Trujillo. Procured the gun from a guy named Miguel who was driving the car in which Lopez and my client were sitting. There was lots of stuff that Judge Walker was asking you about. It supported the proposition that he was – there was evidence for example that Palmer was subservient to Laura and Laura would in some ways humiliate Palmer. Make Palmer come to him to sit in his car to get instructions. Charged Palmer not only to buy the drugs but also for the right to sell them. A lot of different circumstances as Judge Walker was saying that supported the fact that he was in the car right behind watching this, observing it happen, and told them that the victim is now in front of his house, that he was holding the puppet strings. There were two pieces of evidence to support what Your Honor just explained. And they were both out of court statements attributed to Lopez that my client, Laura, was the boss. And a statement attributed by Caban to Palmer that Laura made that critical phone call from the second car. That's it. Those are the two critical pieces of evidence. But what I was able to find – Well, where's the clear error in those pieces of evidence? Where's the clear error in relying on those pieces of evidence before you introduce your response? The clear error that – Isn't that the standard? Right. Because those statements are contradicted by Lopez. Remember, it's a statement attributed to Lopez by Caban at trial. Lopez met with the prosecutors, I think, three different times. And he appeared for a change of plea. And he never once claimed that my client was in charge of the drug conspiracy. So you've got a statement from Lopez contradicting what Caban told the jury. Palmer testified at his sentencing hearing. And he claimed that he was not in business with Laura. In addition, Lopez told the prosecutors before my client's trial that Miguel, who was related to Hada and to Palmer by marriage, made that call. And Caban met with the prosecutors four or five different times before the trial started and didn't mention this claim that Palmer said that's Shorty on the phone. Shorty is Mr. Laura. So you had evidence pointing in the opposite direction. Right. As Judge Park asked you, wasn't it the district judge's entitlement to decide where there's evidence that points in different directions, to decide what the district judge finds is the correct and prevailing evidence? And you need to tell us why the judge's decision was clear evidence. Those facts are in dispute, Judge. And as I understand sentencing law, if a fact is in dispute, the government has the burden to prove the fact. And in this case, after I filed our sentencing memos, this is what they told the judge. Accordingly, while the government has no objection to striking the specific language that Laura directed Trujillo and Lopez to take care of the problem, the sentence should still reflect that Laura and his co-conspirators agreed, a joint agreement, to murder Balcarin as a result of their dispute. There's a difference between my client giving an order to his four co-defendants and an agreement because you have to understand the critical aggravating factor in this case is whether Laura ordered the murder. The judge said in each of the previous sentencing hearings that Mr. Lopez, you're getting 10 years because you're not as culpable as Laura. Mr. Tejada, you're getting five years because you're not as culpable as Mr. Laura. Mr. Laura, you're getting 30 years because you're the guy who ordered the murder. Mr. Palmer, you're getting 15 years because you're less culpable than Mr. Laura who ordered the murder. Mr. Caban got 10 years. He was the guy that pulled the trigger. So if there's no- There's evidence that Laura is the boss, and Palmer reports to him, and when Laura says jump, he says how high, and carries on his business for him. Isn't that enough of an inference that there's not going to be a murder of a person who's occupying a drug spot that everybody wants, that Laura would know about it and authorize it, that they would have done it behind his back? Well, the judge- In other words, it doesn't have to be direct evidence that Laura himself was either the shooter or directed the shooter. If there's evidence of Laura being the head of the operation and a murder occurring in their business that a jury could reasonably infer would be consented to, agreed to, maybe authorized by Laura. Right. So a reasonable juror, hearing the two bits of evidence that we talked about earlier, could reasonably infer to that, right? It's like looking through a keyhole in that door and seeing these folks at this table and maybe a couple people over here, but they don't get the entire view of what happened. The Laura jury did not hear about Tejada's side of the story because the prosecutors didn't release Tejada's report to defense counsel, me at the time, while the case was pending in the Supreme Court. They didn't hear from Lopez. Palmer was on the lam, and when they found him and they brought him back, he contradicted what Caban said. The judge himself made findings that are contrary to what he found in Laura's case. For example, Tejada objected in his sentencing hearing to the idea that someone ordered Caban to murder Balcarin. The objection was sustained, and the judge said because Caban only understood that Palmer wanted to harm Balcarin, the PSR should say that Caban was solicited to do harm to Balcarin, not to murder him. Caban testified in the subsequent sentencing hearings that no one ordered him to murder Balcarin. He said, I knew what they wanted me to do. That's it. And looking through a keyhole is not the same as seeing everything in the room, nor is it the same as the government. Remember, it's the government telling the court this was a group decision. Therefore, my client is not the most culpable person in this conspiracy. He's equal to the other people. That's my point. But he was the boss of the group. That that was that's a possible inference that if Caban's testimony is to be credited that Lopez said Shorty's the boss. Right. Lopez comes in and says, I didn't work for Shorty. I worked for Palmer. Palmer was the boss. That's a fuller version of events. And again, if Mr. Williams, could you wind it up? We've got a minute left for rebuttal. OK, I'll wait. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the court. Meredith Foster for the government. There was no clear error in Judge Gardafi's conclusion after presiding over a lengthy trial and multiple Fatico hearings that Laura, as leader of the drug trafficking crew, was the ultimate decision maker in Balkaran's murder. The record contained ample evidence supporting Judge Gardafi's conclusion. That evidence included Caban's trial testimony that a few months after the murder, Lopez told him that the murder had occurred because Laura and Palmer wanted to take control of Balkaran's drug spot. Evidence demonstrating that Laura was the leader of the drug crew and had the most to gain from Balkaran's death. And Caban's testimony that Laura supervised the shooting from a nearby vehicle and reported Balkaran's location to the shooters shortly before he was shot. While you say he supervised, he was there, he was driving around at that time and identified, I think, if I recall correctly, he identified Balkaran, his house and where he could be found. Is that correct? That's correct, Your Honor. He was there when he was in a car right behind the shooter's car when they recruited Caban. And then they went to, I'm sorry, went to retrieve the firearms that were used to shoot Balkaran. And then he also was the person who made the phone call directing the individuals who shot Balkaran where they could find him. That's correct. And the last piece of evidence that you described, that came where? When did that, how was that information presented? That was presented at the trial and was supported through his testimony at the two Fatico hearings subsequently. So here, while the defense detailed some of the contrary evidence that they presented supporting an alternate conclusion, Judge Gardifi reasonably discounted that evidence, which consisted of unsworn or self-serving statements made by defendants in their own cases. And the law is abundantly clear that where there are two permissible views of the evidence, the district court's choice between them cannot be clearly erroneous. So I have a question. To the extent, if you are relying for the conclusion that, for support for the district court's conclusion that Laura gave the signal, manifested his desire to have the victim murdered, to have the victim killed or physically harmed, if that information that you're relying on came out at the Fatico hearings of other defendants, was that a circumstance in which Laura was a participant and had the opportunity to cross-examine the witness who gave the information? Is it proper that he is chargeable with that information if it came out in a proceeding that he was not a part of and couldn't cross-examine? Yes, Your Honor. And in those cases, you're correct that his counsel was not there to cross-examine. But that's something that Judge Gardifi could have, you know, can take into consideration, as it can take into consideration even the unsworn statements that the defense counsel presented and did take into consideration those statements and gave them their appropriate weights in arriving at his conclusion. And part of the reason that... Was Laura and his counsel, were they even aware of, was there any way of making them aware of what information had come out at the Fatico hearings of other defendants that reflected on whether he gave the instruction to kill Valcarra? They would have been made aware through the transcripts and through the cited portions of that transcript that the government presented and referenced in its own sentencing submissions that they had the opportunity to... So the government referred to this in the sentencing memorandum against Laura? That's correct. And there was no objection on the grounds that this information was solicited in a proceeding in which Laura wasn't a participant? That's correct, Your Honor. Before I sit down, I'll just briefly address this argument that the government is a stop from taking this position. The government's agreement to strike the line from Laura's PSR related only to the narrow issue of whether Laura had used specific words in ordering the murder. It did not concern the broader question of whether Laura was the ultimate decision maker in Valcarra's murder, and that's a question to which the government has consistently taken the position that he was. Unless the panel has any questions, the government will rest on its brief. Thank you, counsel. We'll hear from them. I hate to sound like a broken record, Your Honor, but this ultimate decision maker argument only came up in their appellate brief. And when they had an opportunity to make that argument before sentencing, they didn't. This is what they said. While the government has no objection to striking the specific language that Laura directed Trujillo and Lopez to take care of the problem, the sentence should still reflect that Laura and his co-conspirators agreed to murder Valcarra as a result of their drug dispute. They don't say anything about Laura being a ultimate decision maker. And once they make- Can't the judge reach that conclusion? That's the question. Well, that's the question. They don't argue it. They don't make a point. The judge can look at all the facts and see what Laura's role was and see what Palmer's role was. And based on all the information before the judge, which a judge is entitled to take into account at sentence, reach a conclusion about Laura's role. No, because the factual dispute had been resolved conclusively. They gave it up. They gave up the idea. A sentence, a particular piece of evidence that could have otherwise been used, and they said no, that didn't occur. We're talking about strike that provision, you know, the actual sentence. I'm looking at all the other evidence. All the other evidence was an out-of-court statement attributed to Palmer. To the district judge, but not necessarily for the district judge to find. Well, I find it troubling that when the parties agree that a factual dispute is resolved once and for all, the court can go on and say, oh, you folks are wrong. Because the judge said after he, no, by the way, he granted, he- The government conceded that Laura was not the kingpin and didn't deserve a heftier sentence than others?  No. They did not, but they conceded that he did not direct his co-defendants to take care of the problem. That's it right there. No, they conceded that no such statement was made. They conceded that there was no evidence of a statement made by, isn't this correct? That the government conceded that the evidence did not reflect a statement made by Laura instructing the others to kill Val Coran. How else was he going to, how else was Laura going to convey this message, if not direct it? When one's boss makes it known that he would be happy to see something happen, that is something that can be interpreted by underlings and can have been intended to be interpreted by underlings as a desire that should be brought to fruition. Four co-defendants. Not one of them, not one of them ever said that Laura wanted this guy gone. That doesn't matter, that doesn't matter. Well, they're reading their minds then. No, it's reading the circumstances. A boss making known his desire to have this happen is like an instruction, or at least can be like an instruction. But you have to make it known somehow. I don't know whether they did it in sign language. You would have to speak it, I would think. And there's no evidence that he spoke it. You've got, remember, they talk about self-serving statements. A moment ago you were conceding that he had manifested a desire to have harm inflicted on Val Coran. No, that was Palmer. What?  Palmer what? The idea was that Palmer, when Trujillo was sentenced, the pre-sentence report said that Palmer told Trujillo that he wanted Val Coran murdered. Right? Palmer wanted him murdered. But Caban told the court, I received no such instruction. It was my understanding he only wanted me to hurt him. Tell me where the district judge went wrong when he said, while there was no testimony at trial that Laura told Trujillo and Lopez to quote take care of the problem, it is a fair inference from the evidence that Trujillo and Lopez were acting at Laura's behest and collecting the guns to be used to kill Val Coran in an approaching Caban about committing a murder. Laura tailed his co-conspirators as they collected the guns and searched for Val Coran in the neighborhood. He informed the shooters where Val Coran was immediately before the murder and he was the primary beneficiary of Val Coran's murder. And the judge went on to say it's a fair inference that Laura, Palmer, and Lopez had concluded that they wanted to continue selling drugs at that location and they would have to murder Val Coran. So it seems to me that, and then he goes on to say it suggests that there was evidence at trial that Laura told Trujillo and Lopez to take care of the problem, Laura's objection is sustained to the extent that there's direct evidence that's sustained. But that doesn't change the fact that Palmer, Trujillo, and Lopez were acting at Laura's behest. He draws the conclusion that they were all acting at Laura's behest. Behest is the same thing as, you know, being asked or ordered to do something. I mean that's just another word for the same thing. And the judge basically said a reasonable jury could conclude this. It was a jury but they didn't hear anything about Trujillo or Palmer or Lopez. And they didn't hear Caban saying he didn't order me to do anything and in fact all they wanted me to do was hurt him. I mean that's a real problem, I think. And again, you know, when the government concedes a point like that that's so important, the single most aggravating factor, you can't just dismiss it. I don't think a judge can just dismiss it. They weren't conceding Laura's involvement. No, they said it was a... They weren't conceding the actual testimony. There's no point in continuing. Okay. I mean we've covered all this ground. Okay. Thank you for your time. Thank you, counsel. Appreciate it. Thank you.